## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

MARTHA BLENKO and
LAURA MULLARKY, and
JANE DOE, individually
and on behalf of all others similarly situated,

$\qquad$ Plaintiffs,

v. $\qquad\qquad\qquad\qquad\qquad$ CIVIL ACTION NO.  3:21-0315

CABELL HUNTINGTON HOSPITAL, INC.,

$\qquad$ Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is the Parties' Joint Motion to Certify Class for Settlement Purposes and to Approve Class Settlement and Notice. ECF No. 62. The Plaintiffs move the Court to certify a class defined as follows: 211 non-union retirees from Cabell Huntington Hospital, Inc. who received notification in 2021 of a curtailment or termination in their retiree health benefits. The Parties agreed to settle this matter pursuant to Federal Rule of Civil Procedure 23(b)(3) regarding Plaintiffs' allegations that Defendant's agents made material misrepresentations in substantially the same form to all Affected Individuals, indicating that the Hospital would provide cost-free retiree health insurance for Pre-65 retirees, and Medicare supplemental benefits thereafter throughout the lives of retirees. Defendant denies these allegations but nonetheless agrees to this class action settlement. For the following reasons, the Court **GRANTS** this Motion. ECF No. 62.

### BACKGROUND

This case arises out of Cabell Huntington Hospital's (Defendant) decision to amend its retiree healthcare benefits plan. Defendant served as administrator of all the employee welfare benefit plans and, in this role, operated a unified health and welfare plan for active workers and retirees from 1955 through 2019, which was called Plan 501. This Plan was not formally recorded in writing until 2013. Once Plan 501 was written in a formal document, this Plan contained what is known as "Reservation of Right" language, which stated that, although Defendant planned to continue the Plan indefinitely, it reserved the right to amend, modify, change, or terminate the Plan at any time and for any reason. *See* ECF No. 14-3 § 6.1. Further, the Plan indicated that Defendant did not "guarantee the continuation of any Benefits during employment or after termination thereof." *Id.* § 6.2. Defendant claimed that the only Plan document for the 501 Plan was both the Plan document and the Plan's Summary Plan Document (SPD). Defendant was statutorily obligated to distribute an SPD for the Plan, but it is undisputed that Defendants never distributed any SPD. Since the beginning of Plaintiffs' employment with Defendant, Plaintiffs allege Defendant's human resources staff repeatedly informed Plaintiffs and co-workers that Defendant would pay premiums for retiree welfare benefits through Plaintiffs' lifetimes once they had met the conditions for retirement. Defendant's staff also informed Plaintiffs that retiree spouses would receive health insurance under Defendant's welfare benefits plan until the spouses reached the age of 65. Plaintiffs allege that, prior to the January 2021 letter, they were not informed of Defendant's right to terminate retiree welfare benefits.

In 2019, Defendant adopted a new "wrap" welfare benefit plan referred to as the 506 Plan. This Plan provided that:

> The cost of the benefits provided through the Component Benefit Plans may be funded in part by Employer contributions and in part by Employee contributions…. Cabell Huntington Hospital, Inc. will determine and periodically communicate the Employee's share of

> the cost of the benefits provided through each Component Benefit
> Plan, and it may change that determination at any time. The
> Employer will make its contributions in an amount that in Cabell
> Huntington Hospital Inc.'s sole discretion determines is at least
> sufficient to fund the benefits or a portion of the benefits that are not
> otherwise funded by Employee contributions….

ECF No. 23-3 § 2.6. The plan also contained right to amend and right to terminate language. *Id.*

§§ 5.1, 5.3. A separate SPD document for the 506 Plan contained the right to terminate and right

to amend language. ECF No. 14-19, at 28. Although this document was made available to

employees at any time, as Defendant posted it online, this document was never distributed by

Defendant to Plan participants and beneficiaries as required by statute. Plaintiffs were informed

that the Plan was available to them upon request or online.

In October of 2019, Defendant distributed to employees and retirees an open enrollment

guide for insurance coverage with respect to the 506 Plan. *See* ECF Nos. 23-1, 23-4. These guides

contained the language that Defendant reserved the right to amend or terminate the Plan and

informed participants to look to official Plan documents for complete information regarding

benefits. *See id.* This document also explained that the descriptions of the Plan were not guarantees

of any benefit coverage.

In 2021, Defendant decided to terminate the retiree welfare benefits. A letter was sent to

retirees on January 28, 2021, which announced that, effective March 31, 2021, Post-65 retirees

would no longer have coverage under the Plan and that Pre-65 retirees would be charged a

premium to cover a portion of the cost of coverage under the Plan if they chose to remain enrolled.

This coverage would terminate for the Pre-65 group once they turned 65 or first became Medicare

eligible. On February 12, 2021, Defendant issued a letter to Post-65 retirees informing them that

Defendant would extend benefits through May 31, 2021. On March 8, 2021, Defendant issued a

letter to Pre-65 retirees extending their benefits to June 30, 2021.

Defendants next issued a letter to retirees in April 2021 which extended Post-65 benefit coverage through September 30, 2021, and moving forward, offered to retirees to deposit $250 a month into a Health Reimbursement Account (HRA) to pay for retirees' healthcare. However, this letter, unlike the others, informed the retirees that Defendant reserved right to terminate the benefits under the Plan at any time. Additionally, Defendant issued to Pre-65 retirees a letter that it would pay for these retirees' medical and prescription benefits through the end of June, and that effective July 1, 2021, retirees would have to pay a portion of their premium for their medical and prescription drug healthcare.

After the commencement of the current lawsuit, Defendant once again extended benefits to Pre-65 retirees through October 1, 2021. On August 13, 2021, Defendant issued a letter notifying Pre-65 retirees that if they wished to enroll in a lower-cost high-risk plan, they would have to take action by September 7, 2021. On August 20, 2021, a letter was sent to Post-65 retirees which reiterated that Defendant would terminate retirees Medicare supplement on September 30 and informed retirees that they could join an information session to learn how to use the HRA.

The Parties participated in mediation on May 24, 2022, and reached a settlement agreement in this matter. The proposed settlement totals $5,694,500. The Parties filed this Motion to Certify Class for Settlement Purposes and to Approve Class Settlement and Notice on July 8, 2022. ECF No. 62.

## LEGAL STANDARD

### a. Class certification

Rule 23(a) of the Federal Rules of Civil Procedure establishes four class certification requirements: (1) a class so numerous that joinder of all members is impracticable; (2) questions of law or fact common to the class; (3) a representative party whose claims and defenses are typical

of the class's claims and defenses; and (4) a representative party that will fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a); *Monroe v. City of Charlottesville*, 579 F.3d 380, 384 (4th Cir. 2009). In addition to these four requirements, a plaintiff must also demonstrate that the proposed class action fits into one of three forms permitted by Rule 23(b). *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974). The parties here have agreed to request conditional certification under Rule 23(b)(3). This Rule states that a class may be certified when:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>   (A)  The class members' interests in individually controlling the prosecution or defense of separate actions;
>   (B) The extent and nature of any litigation concerning the controversy already begun by or against class members;
>   (C) The desirability or undesirability of concentrating the litigation of the claims in the particular form; and
>   (D) The likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). To warrant certification under Rule 23(b)(3), "[i]ssues common to the class must predominate over individual issues, and the class action device must be superior to other means of handling the litigation." *Gates v. Rohm & Hass Co.*, 248 F.R.D. 434, 442–43 (E.D. Pa. 2008).

### b.  Class settlement

Federal Rule of Civil Procedure 23(e) provides that a class action shall not be dismissed without the approval of the court. Fed. R. Civ. P. 23(e). Rule 23(e)'s primary concern is protection of class members whose rights may not have been adequately considered during settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991). Approval of class action settlements is committed to "the sound discretion of the district courts to appraise the

reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).

If a proposed settlement will bind class members, as it will here, Rule 23(e)(1) states the court may approve the settlement proposal "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Courts generally follow a two-step procedure for approving class action settlements that will bind absent class members. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). First, the Court preliminarily reviews the proposed settlement to determine if it "'is within the range of possible approval, or in other words, whether there is probable cause to notify the class of the proposed settlement." *Id.* (citations and internal quotations omitted). Once the Court grants preliminary approval and notice is sent to the class, the court conducts a fairness hearing to determine if the proposed settlement is "fair, reasonable, and adequate" under Rule 23(e). *Id.* (citations omitted). Before granting final settlement approval, the court must also determine that class members were given reasonable notice of the settlement. *See Domonoske v. Bank of America*, 790 F.Supp.2d 466, 472 (W.D. Va. 2011) (citation omitted).

Rule 23 requires that, for a proposed settlement to be approved, the Court must consider whether:

> (A) The class representatives and class counsel have adequately represented the class;
> (B) The proposal was negotiated at arm's length;
> (C) The relief provided for the class is adequate, taking into account:
>> (i) The costs, risks, and delay of trial and appeal;
>> (ii) The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) The terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    Any agreement required to be identified under Rule 23(e)(3); and

(D) The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### c.  Class notice

"In the context of a class action, the due process requirements of the Fifth Amendment require '[r]easonable notice combined with an opportunity to be heard and withdraw from the class.'" *Kay Co. v. Equitable Prod. Co.*, No. 06-00612, 2010 WL 1734869, at *3 (S.D. W. Va. Apr. 28, 2010) (quoting *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 231 (S.D. W. Va. 2005)). In *Phillips Petroleum Co. v. Shutts*, the Supreme Court held that due process is satisfied "where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to opt out[.]" 472 U.S. 797, 812 (1985) (internal quotations and citations omitted). Rule 23(c)(2)(B), which applies to this class certified under 23(b)(3), requires that class members receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) further provides:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

## DISCUSSION

The Parties have agreed to a settlement, totaling $5,694,500. The Parties ask the Court to approve of both the certification of the class for settlement purposes and to approve of the class settlement and notice.

### a. Class certification for settlement purposes is appropriate under Rule 23

There is one central dispute in this case regarding a retiree healthcare benefit plan. The parties agree that the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation have been met. They also purport that this matter falls within Rule 23(b)(3), as the class wide settlement provides a uniform resolution to the common claims in this matter regarding the same healthcare benefit plan.

### 1. Numerosity

The proposed class includes 211 non-union retirees from Cabell Huntington Hospital, Inc. who received notification in 2021 of a curtailment or termination in their retiree health benefits. These class members reside across several southern counties in West Virginia, Kentucky, and potentially other adjacent states. There is no "mechanical test" or minimum class size requirement, but courts have generally found numerosity present when a class has 40 or more members. *Baxley v. Jividen*, 338 F.R.D. 80, 86 (S.D.W. Va. 2020) (citing *Holsey v. Armour & Co.*, 734 F.2d 199, 217 (4th Cir. 1984)). The joinder of over 200 class members would be impracticable; thus, the numerosity requirement is met.

### 2. Commonality

Although "[a] single common question will suffice, . . . it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The claims of the members of the proposed class share

common facts and legal issues, as they arise out of Defendant's termination of the retirement medical benefits for the proposed class. While the individual circumstances of each proposed class member may differ slightly, the claims still involve the same actions by Defendant and involve the same legal theories. *See Christman v. Am. Cyanamid Co.*, 92 F.R.D. 441, 452 n.28 (N.D.W. Va. 1981) ("When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment.") By certifying the class, the Court may resolve the questions of fact and law that are common to all of the proposed class members. Commonality has been met.

3. Typicality

Federal Rule 23 requires that "the claims… of the representative parties are typical of the claims… of the class." Fed. R. Civ. P. 23(a)(3). To meet the typicality requirement, the proposed class representatives must show that "the claims or defenses of the class and class representatives arise from the same event or pattern or practice and are based on the same legal theory." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D.W. Va. 2005) (quotations omitted). Here, the Parties represent that the claims and defenses of the Plaintiffs are typical of the claims or defenses of the proposed class members because all proposed class members are similarly affected by Defendant's the termination of the retirees' healthcare benefits—this injury is suffered by Plaintiffs and is suffered by all members of the proposed class members. Thus, the typicality requirement is met.

4. Plaintiffs will fairly and adequately represent the proposed class

The class representatives must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The counsel representing the class must also be capable of "fairly and adequately" representing the interest of the class. Fed. R. Civ. P. 23(g). This analysis takes into

consideration "(1) whether there is conflict between the representatives and class members, and (2) whether the representatives will vigorously prosecute the matter on behalf of the class." *Baxley*, 338 F.R.D. at \*89 (internal quotations omitted).

The Parties represent that the named Plaintiffs will fairly and adequately protect the interest of the proposed class members, as there are no conflicts of interest between the named Plaintiffs and any proposed class members, and the named Plaintiffs have demonstrated their commitment to pursuing their rights. Plaintiffs' interests are clearly aligned with the proposed class members, as they have a common interest in these claims.

Plaintiffs' counsel will also fairly and adequately represent the issues of the proposed class. The attorneys that represent Plaintiffs are Sam B. Petsonk, of Petsonk PLLC, and Bren Pomponio and Laura Davidson of Mountain State Justice, Inc. Courts in the Southern District of West Virginia have found both these firms to be well-qualified to act as class counsel in complex employment matters. See e.g., *Shawn Abner, et al. v. Blackjewel L.L.C., et al.*, Case 3:19-ap-03003 (Order Approving Class Certification and Settlement - ECF 100) (May 5, 2021); *Michael Ray v. Double Bonus Coal Co., et al.*, Case 5:15-cv-03014 (Order Certifying Class - ECF 42) (May 3, 2016); *David Jordan v. Dynamic Energy, Inc., et al.*, case 5:16-cv-04413 (Order Certifying Class - ECF 43) (May 29, 2018); *Frank G. Treadway v. Bluestone Coal Corp, et al.*, Case 5:16-cv-12149 (Order Certifying Class - ECF 25) (May 5, 2018); *Dougie Lester v. Pay Car Mining, Inc., et al.*, Case 5:17-cv-00740 (Order Certifying Class - ECF 40) (June 6, 2018). Proposed class counsel also participated in a trial in the Southern District of West Virginia litigating ERISA claims. *See Fitzwater, et al. v. CONSOL Energy Inc.*, No. 2:16-cv-09849, 2020 WL 3620078 (S.D.W. Va. July 2, 2020). Plaintiffs' counsel have demonstrated their experience in representing complex ERISA cases and serve as fair and adequate class counsel.

5.  Rule 23(b)(3)

Certification is proper under Rule 23(b)(3) when "questions of law or fact common to class members predominate over any questions affecting only individual members, and… class action is superior to other available methods for fairly and efficiently" adjudicating those claims. Fed. R. Civ. P. 23(b). The Parties represent that this class is appropriately certified under Rule 23(b)(3) because the evidence necessary to prove and to demonstrate the appropriate relief for the class claim is identical for Plaintiffs and all proposed class members. The Court must consider:

> (A) The class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) The extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) The desirability or undesirability of concentrating the litigation of the claims in the particular form; and
> (D) The likely difficulties in managing a class action.

Fed R. Civ. P. 23(b)(3). Plaintiffs' claims here arise from questions of law and facts that are common to all proposed class members. These questions and facts predominate over any potential individual proposed class members' factual questions. Further, because joinder is impractical, and to promote judicial efficiency and economy, class action is an appropriate method of adjudicating this matter.

Thus, the Court **GRANTS** the Motion to Certify Class. ECF No. 62.

**b. Class settlement**

The Parties assert that the Court should approve of the settlement because it is fair to the class and that class counsel will provide adequate notice to the proposed class members. Rule 23(e) requires that a Court may approve of a binding class settlement only after a hearing and on finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).

The Parties assert that the settlement terms are fair to the class because: 1) the Parties mediated at arms' length before Magistrate Judge Eifert; 2) the Plaintiffs completed class

discovery; 3) class counsel are experienced in similar litigation; and 4) the number of objectors is anticipated to be minimal.

The Parties provided a copy of the Mediation Agreement (ECF No. 62-1) and also summarized the structure of the settlement:

- Health Reimbursement Account (HRA)
  - Designed to last for a period of at least six years
  - Unallocated funds in an individual HRA upon the death of the account holder, the sums will revert to the High-Risk Fund following the death of each such individual account holder and the full payment of covered costs to the estate of the deceased for all costs that were incurred prior to the holder's death
  - Individual HRA may be used for any expense covered by Medicare Part B or D, and individual accounts may be used for medical, dental, vision, hearing aids, or pharmaceutical costs for the treatment of a class member, their spouse, or dependents
- High-Risk Fund
  - Replicates the last-dollar or "Cadillac" Medicare supplement that the Defendant provided to its retirees
  - Gives class members the option to recover funds to pay for significant pharmaceutical costs not covered by the Medicare supplement, such as costs of specialty drugs or items that fall within the "donut hole"
  - Provides only for expenses that are: a) covered under Medicare Part D, b) incurred for the treatment of a class member, and c) not paid for by class member's Part D Plan (members must have a Part D plan to submit expenses for reimbursement from the High Risk Fund, must submit the bill to the settlement administrator with an explanation of benefits or other proof of rejection of coverage by the class member's Part D Plan)
  - Per capita lifetime cap of $10,000 per class member
- Class Administration
  - Walters Administration has been secured to review bids for providing the HRA and administering the High-Risk Fund. This arrangement entails a one-time fee without any additional "trailing fees" that come out of individual class members accounts
  - Wesbanco Bank will be the placeholder of all accounts and will administer reimbursements along with the class administrator (Walters Administration)
  - Chris Walters of Walters Administration will be a co-signer on all accounts at Wesbanco and will approve all payments
  - Reimbursements for expenses submitted to the settlement accounts will be released weekly
  - Class members will have withdrawal power from any of their accounts for approved reimbursements for covered medical expenses
- Class Representative Service Fee
  - The three Class Representatives will receive service fees of $15,000 each for performing important services for the benefit of the class by commencing litigation

-12-

The Parties assert that this settlement represents strong value for the proposed class. There are 211 proposed class members of eligible retirees who were affected by the challenged actions regarding the retiree benefit plan. The settlement's Common Fund equals $4,974,500. The proposed attorney fee in the settlement is 20% of the Common Fund, or $994,900, to be distributed at the time the settlement is fully funded by Defendant, leaving $3,979,600 in the Common Fund. Divided between the 211 proposed class members, this totals $18,860.66 per class member. Without the settlement, the class members receive $250/month in the HRA, or $3,000 a year, subject to Defendant's right to terminate all payments at any time. The settlement amount represents over six years future benefits, in addition to coverage through the High-Risk Fund.

The Court finds that the class representatives and counsel have adequately represented the interests of the class, as noted in the discussion on class certification. The proposed settlement was negotiated and agreed upon at arm's length before Magistrate Judge Eifert, avoiding  the costs, risks, and delay of trial and appeal. Further, the settlement provides detailed and efficient proposed methods of distributing HRA funds to the proposed settlement class as well as fair terms for proposed attorney's fees. This settlement certainly benefits the proposed class members equally. The proposed class currently risk losing benefits under Defendant's right to terminate payments and currently have no High-Risk Fund benefit. This settlement gives the proposed settlement class over six years of benefits and access to the High-Risk Fund. Thus, the Court preliminarily approves of this settlement.

### c. **Proposed class notice is appropriate**

Rule 23(c)(2)(B) requires that the proposed class receive the best notice that is practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B). The Parties here propose two rounds of individualized class notice by U.S. Mail. The first round will notify the class of certification and

proposed settlement, enabling objections or opting out, and noticing the fairness hearing. The second round will inform the class as to whether the Court has approved the final settlement agreement and how they can retrieve and utilize their settlement payments. A sixty-day period for notice is proposed as a customary and reasonable amount of time to unsure due consideration and opportunity to opt out. The proposed class notice submitted by the Parties (ECF No. 62-3). The Court **FINDS** that this notice properly informs the class members of the nature of the action, the definition of the certified class, the claims and issues in this matter, the option to appear at the hearing, the option to be excluded from the class, and the binding effect of the class settlement.

## CONCLUSION

The Court **GRANTS** the Motion to Certify the Class for Settlement Purposes and to Approve Class Settlement and Notice. ECF No. 62.

A Final Approval Hearing shall be held on **October 31, 2022, at 1:30 P.M.**, before the Court in Huntington, West Virginia to consider whether the settlement is fair, reasonable, and adequate, and should be given final approval. The date or time of the hearing may be changed without further notice to the Settlement Class.

The notice must be sent to the proposed class **on or before 14 days** after the entry of this Order.

Any class member who objects to the settlement will have **60 days** to notify the Clerk of the Court of their objection.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:          August 10, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE